1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                   FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  RICHARD SILVA, | No. 2:25-cv-00142-DJC-JDP |
| 12             Plaintiff, | |
| 13       v. | ORDER |
| 14 | |
| 15  KAISER FOUNDATION HOSPITALS, et al., | |
| 16             Defendants. | |
| 17 | |

18        Before the Court are Plaintiff's Motion to Remand this action back to California

19  Superior Court and Defendant's Motion to Dismiss.  Plaintiff originally filed this matter

20  in the Superior Court of the State of California, County of Solano.  Defendant removed

21  the action to federal court based on section 301 of the Federal Labor Management

22  and Relations Act ("LMRA").  Defendant contends that federal jurisdiction exists

23  because Plaintiff's employment was subject to a collective bargaining agreement that

24  preempts Plaintiff's otherwise state law-based causes of actions.  Plaintiff brings the

25  present Motion to Remand arguing that this action should be remanded to the

26  Superior Court because the rights asserted do not arise under or rely on the

27  interpretation of the collective bargaining agreement and therefore are not

28  preempted by the LMRA.  Relatedly, the Defendant brings a Motion to Dismiss

1    arguing that the Plaintiff's claims are subject to the grievance and arbitration

2    provisions in the CBA and fail to state claims upon which relief can be granted.  For

3    the reasons below, the Court DENIES Defendant's Motion to Dismiss and GRANTS

4    Plaintiff's Motion for Remand.

5                                    **BACKGROUND**

6             Plaintiff Richard Silva brings suit against Defendant Kaiser Foundation

7    Hospitals.  Plaintiff worked for Defendant as a dry wall finisher and painter from April

8    2019 until August 2024 in the Napa and Solano service area.  (FAC (ECF No. 5)  ¶¶ 6,

9    16, 20.)  His employment was governed by a collective bargaining agreement titled

10   "Northern California Drywall Finishers Masters Agreement Between District Council 16

11   & The Wall and Ceiling Alliance" and by the Work Referral document that dispatched

12   him from his Union.[1]  (Not. Removal (ECF No. 1) ¶ 17.)  The CBAs differ in that the

13   earlier CBA, which governed Plaintiff's employment from 2019 until June 30, 2022,

14   did not include Article 15 Section 9, *see* (CBA 1 (ECF No. 1-3, Ex. A) at 18–19) which

15   states:

16              In addition to claims for meal periods, rest period and heat
17              recovery violations governed by Article 11, Section 1, the
                following claims and claims for associated penalties will be
18              resolved exclusively through the procedures set forth in
                this Grievance and Arbitration procedure, and may not be
19              brought in a court of law or before any administrative
                agency such as the California Labor Commissioner: all
20              claims arising under the FLSA, California Labor Code and
                Industrial Welfare Commission Orders, including Wage
21              Order 16-2001 including but not limited to claims for:
22              unpaid wages (e.g. claims for hours worked off the clock,
                overtime wages, minimum wages, incorrect rate(s) or pay
23              and travel time; waiting time penalties. . . .

24

25

26   _____

27   [1] Defendants request judicial notice of the CBAs governing Plaintiff's employment and the Work
     Referral document dispatching Plaintiff from his Union.  The Court GRANTS Defendant's request as
28   pursuant to Federal Rule of Evidence 201(b).

1  (CBA 2 (ECF No. 1-3, Ex. B) Art. 15.9.)  The more recent CBA, effective July 1, 2022,

2  until Plaintiff's termination, does include such provision.

3      While employed by Defendant, Plaintiff took CFRA leave following the birth of

4  his second child (FAC ¶¶ 7,) and when he returned, alleges that Kaiser Construction

5  Manager, Todd Thesman, stated that if Plaintiff was not going to be available when

6  Defendant needed him, Defendant should fire Plaintiff.  (*Id.* ¶ 9.)  In March 2024,

7  Plaintiff had a third child and a few months later, Plaintiff informed Defendant that he

8  sought intermittent CFRA leave.  (*Id.* ¶¶ 11–12.)

9      Within one week of Plaintiff informing Defendant that he sought CFRA

10  intermittent leave, Plaintiff was demoted from a foreman to a journeyman.  (*Id.* ¶ 14.)

11  Defendant then hired Ivan Rodriguez to perform Plaintiff's workplace duties and

12  Plaintiff trained Rodriguez to perform Plaintiff's workplace duties.  (*Id.* ¶¶ 15, 17.)  Prior

13  to hiring Rodriguez, Plaintiff was the only dry wall finisher and painter in the Napa and

14  Solano service area for Defendant.  (*Id.* ¶ 16.)  At the end of July 2024, Plaintiff

15  suffered from multiple health related issues and was forced to call in sick due to

16  physical disability symptoms.  (*Id.* ¶¶ 18–19.)

17      Plaintiff argues that Defendant discriminated and retaliated against Plaintiff by

18  terminating his employment and informed him that he was fired for a "lack of work."

19  (*Id.* ¶ 20.)  However, Rodriguez was hired after Plaintiff's request to take CFRA leave

20  and was trained by Plaintiff to do his job.  (*Id.*)  Moreover, Plaintiff alleges that

21  Defendant failed to pay Plaintiff the wages he was entitled.  (*Id.* ¶ 21.)  Specifically, he

22  alleges that while clocked out and not at work, Plaintiff was forced to reply to work

23  related calls and messages regarding work-related tasks.  (*Id.*)  He estimates that he

24  spent five to twenty minutes per week working off the clock but was not compensated.

25  (*Id.*)

26      Plaintiff initially alleged fifteen causes of action: CFRA Interference; CFRA

27  Retaliation; Physical Disability Discrimination; Failure to Engage in the Interactive

28  Process; Failure to Accommodate; FEHA Retaliation; Wrongful Termination in

1  Violation of Public Policy; Violation of California Labor Code § 223; Failure to Prevent

2  Discrimination and Retaliation; Failure to Pay Minimum Wages; Failure to Pay

3  Overtime Wages; Failure to Pay Wages Owed; Failure to Provide Accurate, Itemized

4  Wage Statements; Waiting Time Penalties; and Violation of California Business &

5  Professions Code § 17200.  (*See generally* Compl.  (ECF No. 1-2, Ex. A).)

6       On January 10, 2025, Defendant filed a Notice of Removal arguing that federal

7  jurisdiction exists under Section 301 of the LMRA.  Plaintiffs then filed the First

8  Amended Complaint.[2]  The First Amended Complaint removed the Failure to Pay

9  Overtime Wages and Failure to Pay Wages Owed claims.  Plaintiff now pursues

10  thirteen causes of action.  The Defendants then filed a Motion to Dismiss (Mot. Dismiss

11  (ECF No. 6)) and Plaintiff filed a Motion to Remand (Mot. Remand (ECF No. 8)) back to

12  California Superior Court.  Because the two Motions raise interrelated issues, the

13  Court will decide the Motions together.

14                    **LEGAL STANDARDS**

15       A defendant may remove a state court civil action to federal court so long as

16  that case could originally have been filed in federal court, based on either diversity

17  jurisdiction or federal question jurisdiction.  28 U.S.C. § 1441(a)–(b); *City of Chicago v.*

18  *Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  Federal question jurisdiction is met

19  where the action "aris[es] under the Constitution, laws, or treaties of the United

20  States."  *See* 28 U.S.C. § 1331.  "[T]he presence or absence of federal-question

21  jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

22  federal jurisdiction exists only when a federal question is presented on the face of the

23  plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475

24  (1998) (citations omitted).  A defense is not part of a plaintiff's properly pleaded

25  statement of his or her claim.  *Id.* (citations omitted).

26  _____

27  [2] The Defendant argues that Plaintiff's filing of the First Amended Complaint is improper.  Although
filed without consent, the Court nevertheless considers the FAC for purposes of efficiently resolving the
28  dispute at hand.

1    The removal statute is strictly construed and federal jurisdiction is rejected

2    where there are doubts as to the right of removal in the first instance.  *Grancare, LLC v.*

3    *Thrower by and through Mills,* 889 F.3d 543, 550 (9th Cir. 2018) (citation omitted).

4    The defendant seeking removal of an action from state court bears the burden of

5    establishing grounds for federal jurisdiction, *see Geographic Expeditions, Inc., v. Est.*

6    *of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Gaus v. Miles, Inc.*, 980 F.2d 564,

7    566-67 (9th Cir. 1992); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th

8    Cir. 2009), but the district court must remand the case "[i]f at any time before final

9    judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C.

10   § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v.*

11   *Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand

12   for lack of subject matter jurisdiction "is mandatory, not discretionary").

13   Additionally, under Federal Rule of Civil Procedure 12(b)(6), a party may move

14   to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ.

15   P. 12(b)(6).  The motion may be granted only if "the complaint lacks a cognizable legal

16   theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

17   *Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

18   While the court assumes all material factual allegations are true and construes "them

19   in the light most favorable to the nonmoving party," *Steinle v. City & Cnty. of S.F.,* 919

20   F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give

21   rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal,* 556 U.S.

22   662, 679 (2009).

**DISCUSSION**

23   

24   **I.    Removal**

25   Defendant does not contest the nature of the Plaintiff's first nine causes of

26   action.  Rather, the dispute centers around Plaintiff's wage and hour causes of action,

27   ten through thirteen.  Defendant argues that the wage and hour claims are preempted

28   

5

1    by Section 301 and therefore federal question jurisdiction exists.  (Opp'n Remand
2    (ECF No. 9) at 5.)

3        The Supreme Court recently reaffirmed the principle that federal courts are
4    courts of limited jurisdiction.  *Thomas v. Pacific Gas & Electric Co.,* 768 F. Supp. 3d
5    1021, 1024 (N.D. Cal. 2025) (citing *Royal Canin, U.S.A., Inc. v. Wullschleger,* 604 U.S.
6    22, 26 (2025)).  Thus, while the Ninth Circuit has "long held that post-removal
7    amendments to the pleadings cannot affect whether a case is removable," *Williams v.*
8    *Costco Wholesale Corp.,* 471 F.3d 975, 976 (9th Cir. 2006) (citations omitted), if a
9    plaintiff files an amended complaint that excises any federal law claims, the court may
10   not exercise supplemental jurisdiction over the state law claims.  *See Royal Canin*
11   *U.S.A.,* 604 U.S. at 25–26 ("When an amendment excises the federal-law claims that
12   enabled removal, the federal court loses its supplemental jurisdiction over the related
13   state-law claims.").

14       After Defendant removed the instant case to federal court, Plaintiff amended
15   his Complaint to remove the Failure to Pay Wages and Failure to Pay Overtime causes
16   of action.[3]  Plaintiff now contends that no federal question jurisdiction exists.
17   Defendant argues that this amendment is improper and does not change whether
18   jurisdiction exists.  But unlike circumstances where a plaintiff merely disclaims reliance
19   on a CBA, *see Vieira v. Kaiser Foundation Hospitals,* No. 2:25-cv-03042-SB-AJR, 2025
20   WL 1393960, at *2 (C.D. Cal. May 14, 2025), or simply deletes the word "federal" from
21   the complaint, *see Abdel-Ghani v. Target Corp.,* No. 0:14-cv-03644-PJS-HB, 2015 WL
22   1292568, at *4–5 (D. Minn. Mar. 23, 2015), here Plaintiff has removed two causes of
23   action from his complaint.  Given the Supreme Court's direction in *Royal Canin*, the
24   Court will assess the remaining causes of action to determine whether it retains
25   jurisdiction following the Plaintiff's amendment.
26   ////

27
28
[3] The Parties dispute whether the now-removed Failure to Pay Wages and Failure to Pay Overtime claims served as a basis for federal question jurisdiction.

## II.    Jurisdiction Under the LMRA

Section 301 of the LMRA is a "mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts" requiring federal courts to exercise jurisdiction over federal labor law claims. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  Where a CBA governs the claim against an employer, section 301 of the LMRA preempts the claim and converts it to a federal question over which the federal court has jurisdiction. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  In effect, section 301 "displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983) (citation omitted), such that "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation omitted).  However, "a defendant cannot, merely by injecting a federal question into an action. . .transform the action into one arising under federal law." *Id.* at 398–99.

The Ninth Circuit established a two-step test in *Burnside v. Kiewit Pac. Corp.* to determine whether a state-law claim is preempted by section 301. *See* 491 F.3d at 1059–60.  The first step looks at "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law" or if the right is granted by the CBA. *Id.* at 1059.  If the cause of action stems only from the CBA, then the claim is preempted. *Id.*  If not, the Court must decide whether the claim is "substantially dependent" on the terms of the CBA by considering "whether the claim can be resolved by looking to versus interpreting the CBA." *Id.* at 1059–60 (citation omitted).  Where a state law claim has been found to be substantially dependent on a CBA typically, "that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016) (citation omitted).

////

### A. Remaining Wage and Hours Claims

Although Plaintiff removed two causes of action, the First Amended Complaint still brings the following counts involving wage and hour claims: failure to pay minimum wages; failure to provide accurate, itemized, wage statements; waiting time penalties; and violations of the UCL.  The causes of action for failure to issue itemized wage statements, waiting time periods, and violations of the UCL are derivative of the failure to pay minimum wages claim.[4]  (Mot. Remand at 6–7.)  The failure to pay minimum wages claim is premised on California Labor Code §§ 1197, 1194 and 1194.2.[5]  Section 1197 provides in part that "[t]he minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Cal. Lab. Code § 1197.

### 1. *Burnside* Step One

Beginning with the first *Burnside* step, the Court finds that the right to be compensated for "hours worked" is a right conferred as a matter of state law.  *See Mellon v. Universal Cty. Studios,* 625 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022) (explaining that state law provided an independent right for plaintiff to be paid for "hours worked").  While it is unclear from the briefing, Defendant appears to argue the Plaintiff's claims arise from the CBA because Plaintiff's wage and hours causes of action are subject to arbitration.  (*See* Opp'n Remand at 5; MTD at 10–11.)[6]  Upon

---

[4] Because the itemized wage statements, waiting time periods and violations of the UCL claims are derivative of the failure to pay minimum wages claim the court need not analyze them separately.  *See e.g., Segismundo v. Rancho Murieta Country Club,* 2022 WL 9921676, No. 2:21-cv-02272-DAD-JDP, at *4 n. 2 (E.D. Cal. Oct. 17, 2022) (analyzing only the underlying claims for preemption).

[5] Section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.  Cal. Lab. Code § 1194.  Section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.  Cal. Lab. Code § 1194.2.

[6] Defendant also makes arguments about the issue of the grievance procedure as it pertains to step two of *Burnside,* however, the Court considers the issue under step one.  *See Renteria-Hinjosa v. Sunsweet Growers,* No. 2:23-cv-01413-DJC-DB, 2023 WL 6519308, at *5–6 (E.D. Cal. Oct. 5, 2023).

1    reviewing both CBAs, it appears that Article 15 Section 9 is a new addition to the more

2    recent CBA.  (*See* CBA 2 Art. 15.9.)  This section expands the CBA's arbitration

3    requirement to wage and hour claims.

4         "[A] court may look to the CBA to determine whether it contains a clear and

5    unmistakable waiver of state law rights without triggering section 301 preemption."

6    *Burnside,* 491 F.3d at 1060.  "[F]or a grievance or arbitration provision to implicate

7    preemption, the 'union-negotiated waiver of employees' statutory right to a judicial

8    forum' must be 'clear and unmistakable."  *Wilson-Davis v. SSP America,* 434 F. Supp.

9    3d 806, 817 (C.D. Cal. 2020) (citing *Munoz v. Atl. Express of LA, Inc.,* No. 2:12-cv-

10   06074-GHK-FMO, 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012) (quoting *Wright v.*

11   *Universal Mar. Serv. Corp.,* 525 U.S. 70, 80–81 (1998)).  Courts generally cannot

12   interfere when a union and an employer agree to include an arbitration provision in a

13   collective-bargaining agreement.  *See 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 257

14   (2009).

15        The CBAs here require that certain "grievances" must go through the outlined

16   arbitration policies.  However, the CBAs define what a "grievance" is differently.  In the

17   earlier version of the CBA, a grievance was "any dispute or controversy between the

18   Employer, the Union and any employee covered by this Agreement, involving the

19   meaning, interpretation, or application of the provisions of this Agreement."  (CBA 1

20   Art. 15.1.)  In the more recent version, the definition goes a step further by including

21   "disputes set forth in Section 9" as grievances.  (CBA 2 Art. 15.1.)  Section 9, in turn,

22   covers

23           all claims arising under the FLSA, California Labor Code
             and Industrial Welfare Commission Orders, including Wage
24           Order 16-2001 including but not limited to claims for:
             unpaid wages (e.g. claims for hours worked off the clock,
25           overtime wages, minimum wages, incorrect rate(s) of pay
             and travel time; waiting time penalties; reimbursement of
26           expenses. . .; recordkeeping of personnel files, time records
             and payroll records; and violation of Labor Code sections
27           212 and 226.

28

1   (CBA 2 Art. 15.9.)  The difference between the CBAs is relevant here because under

2   the first definition of grievance, it would appear that Defendant is inserting a federal

3   question by mounting a defense.  *See, e.g., Renteria-Hinjosa,* 2023 WL 6519308, at *5

4   (collecting cases).  However, under the more recent CBA, the provision shows the

5   bargaining parties intended for Plaintiff's wage and hour disputes, which are brought

6   under the California Labor Code, to be subject to the grievance and arbitration

7   procedure outlined in the agreement.

8        Here, Plaintiff's allegations regarding unpaid wages occurred while his

9   employment was subject to the more recent CBA.  (FAC ¶¶ 7–12.)  Plaintiff does not

10  deny that the procedures outlined in the CBA would apply to him or that the

11  procedures have been exhausted.  Rather, he briefly states that the procedures are

12  unlawful because it contains no exceptions for filing administrative charges and

13  requires employees to waive their rights to pursue class or collective actions involving

14  employment-related claims.  (Opp'n MTD (ECF No. 10) at 12–13.)

15       As for Plaintiff's issue with the waiver of class and collective action, the Supreme

16  Court has held that these provisions are typically acceptable under the NLRA.  *See*

17  *Epic Systems Corp. v. Lewis,* 584 U.S. 497, 524–25 (2018) (holding that employer-

18  employee agreements that contain class and collective action waivers and stipulate

19  that employment disputes are to be resolved by individualized arbitration do not

20  violate the NLRA and must be enforced as written pursuant to the FAA).  However,

21  Plaintiff's reliance on the NLRB's decision in *Prime Healthcare Paradise Valley LLC,*

22  presents a much closer question.  368 NLRB No. 10, 2019 WL 2525342 (June 18,

23  2019).  In *Prime Healthcare*, the NLRB held that an arbitration agreement violated

24  Section 8(a)(1) of the NLRA when it could be reasonably interpreted to interfere with

25  the exercise of the right to file charges with administrative agencies.  *Id.* at *8–9.  Here,

26  the more recent CBA states that certain claims "may not be brought in a court or

27  before any administrative agency such as the California Labor Commissioner."  (CBA 2

28  Art. 15.9.)  Unlike *Prime Healthcare,* arbitration here is not the "exclusive forum for the

1    resolution of <u>all</u> claims, including federal statutory claims under the [NLRA]." *Prime*

2    *Healthcare Paradise Valley,* 2019 WL 2525342, at *9 (emphasis added).  However, the

3    fact that the CBA limits bringing claims before "any administrative agency" is

4    problematic.  The Court is not convinced by Defendant's attempts to distinguish the

5    decision because the NLRB does not appear to limit its holding based on whether an

6    individual employer or a Union sought to remove an employee's right to file charges

7    with the NLRB.  *See id.* at *8–9 ("Consistent with [] clear congressional command, we

8    hold that the FAA does not authorize the maintenance or enforcement of agreements

9    that interfere with an employee's right to file charges with the Board.").

10          At the very least, the holding in *Prime Healthcare* makes the validity of the

11    arbitration provision here unclear.  As such, the Court finds that Defendant's

12    arguments pertaining to the arbitration provision constitutes a defensive use of the

13    CBA.  The use of a defense cannot be used to form the basis of a federal question for

14    purposes of jurisdiction.  *See Caterpillar Inc.,* 482 U.S. at 398–99 ("It is true that when a

15    defense to a state claim is based on the terms of a collective-bargaining agreement,

16    the state court will have to interpret that agreement to decide whether the state claim

17    survives. . . a defendant cannot, merely by injecting a federal question into an

18    action. . . transform the action into one arising under federal law.").  The Court is not

19    invalidating the arbitration provision, and Defendant may raise a defense that Plaintiff

20    failed to comply with the grievance procedure.  However, at this stage, the Court

21    cannot find that a "clear and mistakeable" waiver of Plaintiff's rights exists here such

22    that arbitration is mandatory.  Accordingly, Plaintiff's ability to bring his claims does

23    not arise out of the CBA, and thus there is no federal jurisdiction under *Burnside* step

24    one.

25                    **2**. ***Burnside* Step Two**

26          Turning to the second step of *Burnside*, Defendant argues that the failure to

27    pay wages claim and the derivative causes of action require interpretation of the CBA

28

1    to adjudicate.  Defendant cites to Article 11[7], Sections 1 and 2, and Article 10, Section

2    16[8] in the Motion to Dismiss.  Section 1 defines a "regular work day" and Section 2

3    lays out when overtime is applicable.  Article 10, Section 16 states that

> Employees shall not report to any shop earlier than thirty
> (30) minutes nor to any job earlier than twenty (20) minutes
> before starting time. These provisions shall apply only to
> work within (40) miles from the point of dispatch.  Reporting
> to work on jobs beyond fifty (50) miles from the point of
> dispatch shall be in accordance with the provisions of
> "Travel Time" herein defined.

(CBA 1 Art. 10.19; CBA 2 Art. 10.16).  However, "it is not enough for Defendants to

provide a laundry list of provisions that they allege the court must interpret to resolve

Plaintiff's claims; Defendants must explain why interpretation, as opposed to mere

reference to the CBA, is necessary."  *Wilson-Davis v. SSP Am. Inc.,* 434 F. Supp. 3d

806, 813 (C.D. Cal. 2020) (emphasis in original).  Here, Defendant has failed to explain

how interpretation of the CBA is required to adjudicate the wage and hour claims.

Plaintiff does not dispute the definition or meaning of the terms in the cited

provisions.  Rather, he argues that he was not properly paid for the time he worked

outside of the hours listed in the "regular work day provision."  Moreover, Defendant

does not dispute that the work Plaintiff alleged he did would be compensated such

that interpretation of the CBA is needed.  *Compare Mellon,* 625 F. Supp 3d at 1015

(discussing that interpretation of the CBA was required where it was unclear whether

the work Plaintiff did was intended to be compensated).  Given that there is no need

---

[7] Defendant refers to Article 9 in the CBA, which discusses apprenticeship, however the referenced sections appear to be under Article 11 "Working Conditions."

[8] Defendant cites to Article 9 Section 2 of the CBA for this provision.  However, upon review, the Court cannot locate the precise language used in Defendant's motion. (*See* Mot. Dismiss at 7.)  However, the Court finds the above stated language, which most closely resembles Defendant's citation at Article 10, Section 19 in CBA 1 and Article 10, Section 16 in CBA 2.  (CBA 1 Art. 10.19; CBA 2 Art. 10.16.)  Moreover, the Court notes that there have been several other inconsistencies with regard to citations to the CBAs.  Counsel is cautioned to remember their duties under Rule 11 of the Federal Rules of Civil Procedure.

1  to interpret the CBA, the Court finds that Plaintiff's unpaid minimum wage claim and

2  derivative claims are not preempted.  *See, e.g. Alexander v. Republic Services, Inc.,*

3  2017 WL 2189770, No. 2:17-cv-00644-WBS-AC, at *4–5 (E.D. Cal. May 18, 2017)

4  (finding that a claim for unpaid minimum wages under section 1197 was not

5  preempted because the court would merely have to decide whether defendants paid

6  plaintiff minimum wages for all the hours they worked, which does not implicate CBA

7  provisions).

8  **CONCLUSION**

9       For the reasons discussed above, IT IS HEREBY ORDERED that Plaintiff's Motion

10  to Remand (ECF No. 8) is GRANTED.  Defendant's Motion to Dismiss (ECF No. 6) is

11  DENIED.  The Clerk of Court is directed to close this case and remand the action back

12  to the Superior Court of California, County of Solano.

13

14       IT IS SO ORDERED.

15  Dated:  __**August 12, 2025**__

16  Hon. Daniel J. Calabretta
   UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22  DJC6 – Silva25cv00142.mtr

23

24

25

26

27

28

13